1  PETER SULLIVAN, SBN 101428
   GLENN K. BEATON, SBN 12160 (*PRO HAC VICE*)
2  THERESA M. MELSON, SBN 185209
   GIBSON, DUNN & CRUTCHER LLP
3  333 South Grand Avenue
   Los Angeles, California 90071-3197
4  Telephone: (213) 229-7000
   Facsimile: (213) 229-7520
5
   GREGORY D. PHILLIPS, USBN 4645 (*PRO HAC VICE*)
6  SCOTT R. RYTHER, USBN 5540 (*PRO HAC VICE*)
   HOWARD, PHILLIPS & ANDERSEN, P.C.
7  560 East 200 South, Suite 300
   Salt Lake City, Utah 84102
8  Telephone:  (801) 366-7471
   Facsimile: (801) 366-7706
9
10  Attorneys for Nissan Plaintiffs
11
12              UNITED STATES DISTRICT COURT
13           CENTRAL DISTRICT OF CALIFORNIA
                 WESTERN DIVISION
14  NISSAN NORTH AMERICA, INC.,    | Case No. SACV 03-0631 CJC
    a California corporation       | (JTLx)
15  and NISSAN JIDOSHA             |
    KABUSHIKI KAISHA dba NISSAN    | SIXTH AMENDED COMPLAINT
16  MOTOR CO., LTD. a Japanese     | FOR TRADEMARK AND
    Corporation,                   | COPYRIGHT COUNTERFEITING
17                                 | AND INFRINGEMENT AND
                                   | UNJUST ENRICHMENT:
18           Plaintiff,            |
       vs.                         |
19                                 | 1. Violation of Lanham Act
    EUROPACIFIC PARTS              |    § 1114(1);
20  INTERNATIONAL, INC. a          | 2. Violation of Lanham Act
    California corporation, dba    |    § 1125(a);
21  SERVICE & VALUE EXPEDITORS,    | 3. Violation of Lanham Act
    and INTERSTATE AUTOMOTIVE      |    § 1125(c);
22  DISTRIBUTORS, a California     | 4. Violation of Lanham Act
    corporation dba GENUINE        |    Infringement
23  PARTS ADVANTAGE, and METRO     | 5. Violation of Business
    AUTOMOTIVE, and VARIOUS        |    and Profession Code
24  JOHN AND JANE DOES AND ABC     |    Sections 17200 and
    COMPANIES,                     |    17500
25                                 | 6. Tortious Interference
           Defendants.            |    Under California Law
26                                 | 7. Copyright Infringement
                                   |    Under 17 U.S.C. § 501.
27                                 | 8. Unjust Enrichment Under
                                   |    California Law
28

Gibson, Dunn &
Crutcher LLP

1

2      Nissan North America, Inc. ("Nissan N.A. ") and

3  Nissan Jidosha Kabushiki Kaisha dba Nissan Motor Co., Ltd.

4  ("Nissan Motor") (sometimes collectively referred to

5  herein as "Nissan") complain of defendants Europacific

6  Parts International, Inc. dba Service & Value Expeditors

7  ("EPI"), and Interstate Automotive Distributors dba

8  Genuine Parts Advantage and Metro Automotive ("Interstate

9  Automotive"), various John Does, Jane Does, and ABC

10  Companies (collectively "Defendants"), and allege as

11  follows:

12               **SUBSTANCE OF THE ACTION**

13      1.  This is an action for trademark counterfeiting,

14  infringement, and dilution of Nissan's federally-

15  registered trademarks and trade dress, and for related

16  claims based on Defendants' importation, manufacture,

17  promotion, advertisement, distribution, and sale of

18  counterfeit automobile parts bearing counterfeits of the

19  world famous trademarks and trade dress of Nissan.  In

20  addition, on information and belief, Defendants advertise,

21  promote and otherwise materially misrepresent, directly or

22  indirectly, that the "Nissan" parts that they sell are the

23  most up to date parts made by Nissan.  Defendants also

24  fail to disclose that the "Nissan" parts they sell are not

25  covered by a warranty from Nissan N.A.  Nissan alleges

26  claims for federal trademark infringement, false

27  designation of origin or sponsorship, federal trademark

28  dilution, under Sections 32(1), 43(c), and 43(a) of the

Gibson, Dunn &
Crutcher LLP

1    United States Trademark Act of 1946, as amended by the

2    Trademark Counterfeiting Act of 1984 (15 U.S.C § 1116(d)),

3    15 U.S.C. §§ 1114(1), 1125(a), and 1125(c), (the "Lanham

4    Act"), trademark infringement under common law, violation

5    of California Business & Professions Code Sections 17200

6    and 17500, tortious interference with Nissan's contractual

7    and business relations, copyright infringement, and unjust

8    enrichment.  Nissan seeks injunctive relief preventing

9    Defendants from using the Nissan trademarks, trade dress,

10    and copyrights, counterfeits thereof, from making

11    misrepresentations concerning warranties and from selling

12    obsoleted Nissan parts; and a permanent order permitting

13    seizure of the counterfeit and infringing goods and the

14    means for manufacturing them, an equitable accounting, an

15    equitable disgorgement of all revenues and/or profits

16    wrongfully obtained, as well as attorneys' fees and costs.

17    **THE PARTIES**

18    2.   Nissan N.A. is a California corporation with its

19    principal place of business at 18501 South Figueroa

20    Street, Gardena, California 90248.  Nissan N.A. is the

21    exclusive U.S. licensee for Nissan Motor with exclusive

22    authority to import Nissan motor vehicles, parts,

23    accessories, and related products into the continental

24    United States under the Nissan trademarks, and with the

25    exclusive authority and right to use and enforce the

26    Nissan trademarks in the United States with respect to

27    Nissan motor vehicles, parts, accessories, and related

28    products.   (The motor vehicles, parts, accessories, and

Gibson, Dunn &
Crutcher LLP

related products are referred to hereinafter as "Nissan
Products.")   Nissan N.A. sells Nissan Products throughout
the United States.   Nissan N.A. is the U.S. licensor of
authorized Nissan automobile dealers.   Nissan N.A. and its
authorized Nissan dealers are the only authorized
providers of Nissan Products, vehicles, and vehicle
maintenance services under the Nissan name, trademarks,
and trade dress in the United States.

3.   Nissan Motor is an entity existing under the laws
of Japan and has a principal place of business in Tokyo,
Japan.   Nissan Motor is a manufacturer of motor vehicles
and other products and has been selling motor vehicles,
parts and accessories since 1959.   Nissan Motor does not
itself do business in the United States, and, as set forth
above, has granted Nissan N.A. the exclusive authority and
right to use the Nissan trademarks on Nissan Products in
the United States.

4.   Defendant Europacific Parts International, Inc.,
dba Service & Value Expeditors ("EPI"), is a California
corporation doing business at 18071 Fitch Avenue, Irvine,
CA 92614, and is in the business of, among other things,
the importation, manufacture, promotion, advertisement,
distribution, and sale of counterfeit automobile parts and
accessories bearing counterfeits of the world famous
Nissan trademarks and trade dress.

5.   Defendant Interstate Automotive dba Genuine Parts
Advantage and Metro Automotive ("Interstate Automotive"),
is a California corporation doing business at 4850

1 Eucalyptus, Chino, CA 91710, and is in the business of,

2 among other things, the importation, manufacture,

3 promotion, advertisement, distribution, and sale of

4 counterfeit automobile parts and accessories bearing

5 counterfeits of the world famous Nissan trademarks and

6 trade dress.

7     6.  Upon information and belief, defendants EPI and

8 Interstate Automotive acquire counterfeit Nissan parts and

9 accessories from the same or similar sources.  In

10 addition, defendants EPI and Interstate Automotive sell

11 counterfeit Nissan parts to Nissan dealers in the United

12 States.  Accordingly, Nissan's claims against defendants

13 EPI and Interstate Automotive arise from the same series

14 of transactions and occurrences, and common questions of

15 fact and/or law will arise.

16     7.  Upon information and belief, defendants Various

17 John Does, Various Jane Does, and ABC Companies are

18 transacting and doing business in this District and are

19 actively engaged in the business of, among other things,

20 the importation, manufacture, promotion, advertisement,

21 distribution, and sale of counterfeit automobile parts and

22 accessories bearing counterfeits of the world famous

23 Nissan trademarks and trade dress.  The identities of the

24 Various John Does, Jane Does, and ABC Companies and the

25 locations at which they carry on these illegal activities

26 are not presently known and this Complaint will be amended

27 to include the name or names of said individuals and

28

1  companies if and when they permit themselves to be
2  identified.

3  ## JURISDICTION AND VENUE

4  8.  This Court has subject matter jurisdiction of
5  this action pursuant to:

6  (a)  The International Convention for the
7  Protection of Industrial Property, 13 U.S. Treaties and
8  Other International Agreements (1962), implemented by
9  Sections 39 and 44 of the Lanham Act, 15 U.S.C. §§ 1121
10  and 1126, and by the Judicial Code, 28 U.S.C. § 1331;

11  (b)  Section 39 of the Lanham Act, 15 U.S.C. §
12  1121, giving this Court jurisdiction over all actions
13  arising under the Lanham Act without regard to the amount
14  in controversy;

15  (c)  Section 32(1) of the Lanham Act, 15 U.S.C. §
16  1114(1), relating to the counterfeit, reproduction, or
17  colorable imitation of a registered mark in connection
18  with the sale, offering for sale, distribution, or
19  advertising of goods;

20  (d)  Section 43(a) of the Lanham Act, 15 U.S.C.
21  Section 1125(a), relating to the use of false designations
22  of origin and/or sponsorship tending falsely to describe
23  or designate the source, and/or sponsorship of goods
24  affecting commerce, and relating to false advertising and
25  trade dress infringement and dilution;

26  (e)  Section 43(c) of the Lanham Act, 15 U.S.C.,
27  Section 1125(c), relating to dilution;

28

Gibson, Dunn &
Crutcher LLP

6

(f) The Judicial Code, 28 U.S.C. § 1338(b), relating to claims of unfair competition "joined with a substantial and related claim under the ... trademark laws;"

(g) The Judicial Code, 28 U.S.C. § 1331, relating to federal question jurisdiction;

(h) The Judicial Code, 28 U.S.C. § 1367 providing for supplemental jurisdiction over the state law claims in this action; and

(i) The Judicial Code, 28 U.S.C. § 1338(a), relating to copyright claims.

9.    Venue is proper under 28 U.S.C. §§ 1391 and 1400 in that a substantial part of the events giving rise to the claim occurred in this district, and Defendants may be found here.

## GENERAL ALLEGATIONS

### *Nissan's Trademarks And Warranties*

10.  For many decades, Nissan N.A., and its predecessors in interest, have used various trademarks, service marks, and trade dress (hereinafter the "Nissan Marks") in connection with the sale, distribution, maintenance, service, and repair of Nissan Products in the United States.  Nissan N.A. has extensively employed and caused to be advertised and publicized throughout the world, including the United States, the Nissan Marks to identify Nissan Products and services sold under its aegis.

Gibson, Dunn &
Crutcher LLP

11. Nissan Motor is the owner of all right, title and interest in the Nissan Marks. With respect to the Nissan Marks, Nissan Motor owns several United States trademarks registrations. These registrations are valid, unrevoked, subsisting, and incontestable, and constitute prima facie evidence of Nissan Motor's exclusive rights in the Nissan Marks. 15 U.S.C. § 1057(b). Nissan's trademark registrations include among others:

(a) U.S. Registration No. 686,587, registered as a trademark on October 13, 1959, for the word NISSAN for use with ships and vehicles and parts thereof;

(b) U.S. Registration No. 689,796 registered as a trademark on December 15, 1959, for the NISSAN Logo for use with ships and vehicles and parts thereof;

(c) U.S. Registration Nos. 1,347,230, 1,448,362, and 2,057,276, registered as trademarks for the word "NISSAN";

(d) U.S. Registration Nos. 2,203,744, 2,043,779, and 2,047,840, registered as trademarks for NISSAN Logo; and

(e) the distinctive trade dress of Nissan packaging for automobile parts. As set forth above, Nissan Motor has granted to Nissan N.A. the exclusive authority and right to use the Nissan Marks in the United States with respect to passenger automobiles, parts, accessories, services, and any other products or services relating to passenger automobiles.

Gibson, Dunn &
Crutcher LLP

12. Over the years, Nissan N.A. has spent hundreds of millions of dollars and has expended significant effort in advertising and promoting authorized Nissan Products and services and in developing the Nissan Marks in the United States and elsewhere.  All Nissan Products prominently display the Nissan Marks.  As a result of such advertising and expenditures, Nissan N.A. has established considerable goodwill in the Nissan Marks in the United States.  The Nissan Marks have become widely known and recognized throughout the world as the symbols of high quality automotive goods and services.

13. Nissan N.A. and Nissan Motor maintain high standards of quality for genuine Nissan Products and maintain stringent quality control over such Nissan Products and authorized licensees of Nissan.  Nissan N.A. and Nissan Motor constantly review their parts to determine whether they are in need of improvement, both for quality and safety.  Nissan N.A. and Nissan Motor regularly update and modify various parts, as needed, based on this quality control monitoring.  The foregoing quality control requirements and procedures assure that all products sold by Nissan will be identified by purchasers as high quality products emanating from and/or licensed, sponsored, or authorized by Nissan.  Conversely, without complying with applicable import rules and to the extent that Defendants sell parts for Nissan automobiles bearing the Nissan trademarks without subjecting such parts to Nissan's quality control, monitoring, review, and

1   updating, Defendants create a climate for confusion and

2   deprive Nissan of the critical ability to exercise control

3   over the quality and safety of parts bearing Nissan's

4   brand.

5       14. Nissan N.A. and its authorized dealers are the

6   only parties authorized to use the Nissan Marks in the

7   United States in connection with the sale, distribution,

8   or advertising of any Nissan Products and services.

9       15. Nissan N.A. sells Nissan automotive parts to an

10  established network of authorized Nissan dealers.  Nissan

11  N.A. warrants that the Nissan parts it sells to Nissan

12  dealers, who in turn sell these Nissan parts to the

13  public, are of high quality and craftsmanship that

14  consumers expect of Nissan products ("Nissan Warranties").

15  This contributes to Nissan's reputation for quality

16  products that Nissan N.A. is willing to stand behind.

17  Consumers associate Nissan's Mark not just with the high

18  quality of its products, but also with a high level of

19  customer service, Nissan's commitment to dealers and

20  consumers alike, and its willingness to stand behind its

21  products in the event they need to be repaired and/or

22  replaced.

23      16. Nissan Warranties covers parts, other than audio

24  parts: (1) for 12 months or 12,000 miles (whichever is

25  earlier) or; (2) for the duration of the vehicle warranty,

26  whichever is longer.  The Nissan Warranties are broad and

27  have few items that are not covered.  Nissan Warranties

28  permit the consumer to obtain warranty service by

Gibson, Dunn &
Crutcher LLP

delivering the warranted part to any authorized Nissan dealer in the United States or Canada, along with proof of purchase. If the part or accessory to be repaired was originally installed by an authorized Nissan dealer, the part or accessory will be removed and reinstalled after repair at no charge for parts and labor; otherwise Nissan will replace the genuine Nissan part at no charge to the customer.

17. Nissan and Nissan dealers rely upon the strength of the Nissan Mark and goodwill associated with the Nissan name, as well as Nissan Warranties in making sales. Nissan and Nissan dealers derive business and revenues in large part based upon the reputations of Nissan to deliver quality products that Nissan N.A. stands behind and the recommendations from existing customers to potential customers (i.e. by word of mouth). Additionally, Nissan dealers rely upon repeat business from consumers.

18. Except for parts originally distributed by Nissan N.A., Nissan Warranties do not cover or extend to parts sold by Defendants.

19. Except as alleged above, Defendants cannot offer Nissan Warranties and do not offer a comparable warranty for the parts sold by them containing the "Nissan" name. Indeed, Interstate offers no warranty at all on the parts it sells. Upon information and belief, EPI does not extend any warranty to some customers and/or some parts. While EPI's invoices, on occasion, set forth a warranty,

Gibson, Dunn & Crutcher LLP

1  it is very limited and hidden on the back of its invoices

2  to dealers in small print.

3  　　　20. To the extent EPI has warranted the parts and

4  accessories it sells, it is not nearly as comprehensive or

5  complete as Nissan Warranties.  For example, EPI warrants

6  some parts for only 6 months from the date of sale or

7  6,000 miles, whichever comes first, half that of the

8  Nissan Warranties.  The restrictions placed on the EPI

9  warranty are so restrictive that any warranty is rendered

10  illusory.

11  　　　21. Defendants do not disclose to Nissan dealers or

12  to consumers that the parts sold by them are not covered

13  by Nissan Warranties.  Nor do Defendants label the parts

14  they sell or the packaging in which the parts are sold to

15  inform customers that the parts sold by them are subject

16  to a restrictive warranty or are not warranted by

17  Defendants and are not covered by Nissan Warranties, in

18  violation of several state statutes, including California

19  Civil Code §  1797.8-1797.86 and New York General Business

20  Law § 218-aa.  In so doing, Defendants are counting on

21  confusion to pass warranty costs on to Nissan and evade

22  any obligation they might have.

23  　　　22. Additionally, defendant EPI has violated 15

24  U.S.C. § 2301 et seq. (the "Magnuson-Moss Act") by failing

25  to: (1) clearly identify the names and addresses of the

26  warrantors; (2) list the step-by-step procedure which the

27  consumer should take in order to obtain performance of any

28  obligation under the warranty, including the

identification of any person or class of persons authorized to perform the obligations set forth in the warranty; and (3) state the elements of the warranty in words or phrases which would not mislead a reasonable, average consumer as to the nature or scope of the warranty.  15 U.S.C. § 2302(a)(1), (7), (13).

23. Additionally, Nissan is informed and believes that defendant Interstate, if and to the extent it has a warranty, has violated 15 U.S.C. § 2301 et seq. (the "Magnuson-Moss Act") by failing to: (1) clearly identify the names and addresses of the warrantors; (2) list the step-by-step procedure which the consumer should take in order to obtain performance of any obligation under the warranty, including the identification of any person or class of persons authorized to perform the obligations set forth in the warranty; and (3) state the elements of the warranty in words or phrases which would not mislead a reasonable, average consumer as to the nature or scope of the warranty.  15 U.S.C. § 2302(a)(1), (7), (13).

24. Defendant EPI also imposes unreasonable duties and obligations (other than notification) upon the consumer as a condition of securing a remedy for any consumer product that malfunctions, is defective or does not conform to the written warranty, in violation of 15 U.S.C. § 2304(b)(1).

25. Defendant EPI's warranty is also a "deceptive warranty" within the meaning of 15 U.S.C. Section 2310(c)(2) in that: (1) it contains a promise and/or

representation that Nissan believes is false and/or
misleading; (2) it fails to contain information which is
necessary in light of all of the circumstances; and (3) it
uses the term "warranty" but the terms and conditions of
this warranty are so limited in scope and application as
to deceive a reasonable individual. EPI fails to disclose
to consumers <u>prior</u> to purchasing parts that bear the name
"Nissan" that these parts are not warranted by Nissan.
Nor does EPI disclose that it offers no warranty or a more
limited warranty than the Nissan Warranties. Nor does EPI
disclose that EPI parts will not be replaced or repaired
by Nissan dealers.

### *Defendants' False Advertising and Material Omissions*

26. Defendants misrepresent the parts they sell by
representing directly or indirectly that they are covered
by Nissan Warranties, in part because, among other things,
Defendants describe them in advertising, sales and
promotional materials as "genuine Nissan parts" that are
sold in "genuine Nissan packages." Defendants use the
phrase "genuine Nissan parts" with the intent that Nissan
dealers and consumers alike will believe these parts are
not only manufactured by Nissan or by authorized sources
but are covered by Nissan Warranties. Defendants
intentionally use this phrase in order to mislead and
confuse Nissan dealers and consumers into believing that
they are covered by Nissan Warranties and that the
products sold by Defendants are affiliated with Nissan.

27. Because the parts sold by Defendants appear similar, and because Defendants advertise and represent that the parts they sell are "genuine Nissan parts" and/or that they are sold in "genuine Nissan packages," when they do not carry Nissan Warranties, there is a substantial likelihood that Nissan dealers and consumers are confused and deceived into believing, among other things, that the parts sold by Defendants are actually covered by Nissan Warranties when they are not.

28. As a result, Nissan dealers and consumers who purchase Nissan parts from Defendants are confused and deceived as between those parts sold by Nissan which are covered by Nissan Warranties and those parts sold by Defendants, which are not, and, at best contain a very limited warranty, if any at all.

29. As it must to remain competitive and maintain its reputation as a manufacturer of quality parts, Nissan constantly reviews its parts to determine if they can be improved upon in order to increase customer satisfaction and/or to make them even more safer and more efficient. Because there is sometimes no reason to, Nissan does not always assign new product numbers to its improved parts.

30. Upon information and belief, Defendants sell obsoleted and dated parts which do not contain recent Nissan improvements and which may even affect the safety of the vehicle. Because parts numbers do not always change, and Defendants do not advise consumers that the parts bearing the part numbers sold by them are not the

most up-to-date parts, Nissan dealers and consumers are confused and misled to believe that they are purchasing state-of-the-art Nissan parts, when this may not be true.

31. Moreover, Defendant EPI specifically advertises that the parts it sells are the "highest quality parts" when in fact it sells parts with the "Nissan" name that are not authorized for sale by Nissan and which may be obsolete and may not contain the latest Nissan improvements.

32. Defendants also advertise that the parts they sell are "genuine Nissan parts" when in fact the parts they sell may be outdated and are not approved by Nissan for sale.  Defendants fail to disclose in their advertising that the parts they sell bearing the "Nissan" name may be obsolete and are not the most current parts available from Nissan.

33. As a result of Defendants' conduct as hereinabove alleged:

      A.   Consumers believe that they are purchasing a genuine Nissan part that is the most up-to-date and improved Nissan part available when they may not be;

      B.   Consumers unknowingly purchase parts not covered by Nissan Warranties;

      C.   Dealers believe that they are purchasing a genuine Nissan part which is up to date and improved and covered by Nissan Warranties when it may not be;

D.  Dealers are forced to either: (1) Refuse to provide warranty work on "Nissan" parts sold by Defendants, as they are not covered by Nissan Warranties, or any other warranty thereby risking customer dissatisfaction; or (2) provide warranty work, without reimbursement, on parts that are not covered by Nissan Warranties, or any other warranty; and

E.  Nissan is forced to either cover under Nissan Warranties parts which it did not sell and did not warrant or risk loss of goodwill and damage to its dealer relationships and loss of consumer goodwill and trust from those customers who purchase Defendants' parts relying upon the Nissan Mark and quality of Nissan products as well as Nissan Warranties.

### *Defendants' Unauthorized Uses of the Nissan Marks*

34.  Defendants are not in any way affiliated with, authorized, or sponsored by Nissan and have no authority to use the Nissan Marks and trade dress to identify the business they conduct or any goods they import, manufacture, promote, distribute, or sell.

35.  Defendants' use of the Nissan Marks and trade dress in conjunction with the importation, manufacture, promotion, distribution, and sale of counterfeit parts and products constitutes a misappropriation of the Nissan Marks and associated goodwill, and is likely to cause

Gibson, Dunn &
Crutcher LLP

17

1 purchasers of Defendants' products, as well as the public
2 at large, to believe that Defendants' parts and products
3 are affiliated with, authorized, or sponsored by Nissan
4 Motor and Nissan N.A. In addition, Defendants' wrongful
5 use of the Nissan Marks dilutes and tarnishes the Nissan
6 Marks.

7 **_Defendants' Sale of Counterfeit Nissan Parts_**

8 36. Nissan has discovered and learned that Defendants
9 are manufacturing, importing, promoting, distributing,
10 and/or selling counterfeit Nissan Parts and Accessories
11 (the "Counterfeit Products") bearing counterfeits of the
12 Nissan Marks and trade dress. Defendants are selling
13 these Counterfeit Products to authorized Nissan dealers in
14 the United States. These parts and accessories are
15 counterfeit because, among other things, Defendants obtain
16 these parts and accessories from unauthorized sources and
17 suppliers.

18 37. Specifically, defendant EPI has admitted in
19 paragraph 10 of the Complaint EPI had filed against Nissan
20 N.A. in the Superior Court of the State of California for
21 the County of Los Angeles that EPI acquires parts and
22 accessories from unauthorized sources and suppliers, thus
23 making these parts and accessories counterfeit. EPI
24 alleges in paragraph 10 that EPI's "supply sources"
25 include "companies who supply parts to Nissan-affiliated
26 companies," "former such suppliers," and "aftermarket
27 parts manufacturers." (_See_ Exhibit A.) Additionally, EPI
28 (or SAVE) advertisements inform consumers that "SAVE is

Gibson, Dunn &
Crutcher LLP

known as a premier US distributor of Genuine, OE, OEM and high quality aftermarket import auto parts." Under well-established law, such supply sources are selling Counterfeit Products. *E.g.*, *McCarthy* ' 25:42; *Hunting World, Inc. v. Reboans, Inc.*, 24 U.S.P.Q. 2d 1944 (N.D. Cal. 1992) (explaining that parts that come out the backdoor of suppliers or that come from former suppliers are counterfeit).

38. In addition, Nissan has learned through its participation in various anti-counterfeiting associations that billions of dollars of counterfeit automotive parts are being manufactured and placed into the world-wide stream of commerce in countries and regions such as China, the Middle East, the Far East, Mexico, Brazil, and Argentina. Increasingly, these counterfeit parts, including counterfeit Nissan parts and accessories are being imported into the United States. According to the Federal Trade Commission, $3 billion in counterfeit automobile parts are sold in the United States each year, and counterfeiters are siphoning off $12 billion in sales worldwide.

39. Nissan has also recently received warranty claims arising from parts purchased from EPI by Nissan Dealers. These Nissan Dealers have requested that Nissan warrant the Counterfeit Products supplied by Defendants. Such parts failures and warranty claims cause Nissan to believe that the parts and accessories supplied by Defendants are in fact counterfeit.

40. The Counterfeit Products being sold by Defendants include nearly all types of parts for Nissan automobiles, including, upon information and belief, brake parts (cables, drums, pads, rotors, sensors, shoes, wheel cylinders), chassis parts (ball joints, shock absorbers, strut inserts, tie rods and ends), drive trains (axles, clutch hydraulics, clutches, cv boots and joints, hub assemblies), electrical parts (bulbs, lenses, fuses, lamp assemblies, ignition parts and wire sets, antennas and masts, relays and sensors, turn signal assemblies, voltage regulators) filters (air, fuel, oil, transmission), HVAC (air condition hoses, compressors, fan clutches, motors, heater cores, oil coolers, radiators, thermostats, water pumps), engine parts (camshafts, cylinder heads, drive belts, fan belts, flywheels, gaskets and seals, main and rod bearings, motor mounts, oil pumps, pistons, rings, rocker arms timing chains, valves), and fuel parts (catalytic converters, exhaust systems, fuel hoses, fuel injection parts, fuel pumps).

41. Until Nissan is afforded the opportunity of discovery from Defendants to determine the suppliers and sources of the Counterfeit Products that Defendants are selling in the United States to United States Nissan Dealers, Nissan will be unable to determine the exact nature of Defendants' counterfeiting and wrongful conduct because the identity of the supply sources of the parts and accessories obtained by Defendants is within the exclusive control of the Defendants. Until Nissan is able

Gibson, Dunn & Crutcher LLP

to conduct discovery of Defendants and determine the
sources and suppliers from whom Defendants obtain the
parts and accessories, Nissan is unable to determine the
precise nature and extent of Defendants' counterfeiting,
trademark infringement, and other wrongful conduct.

42. Defendants have used and continue to use the
Nissan Marks and trade dress with actual knowledge of
Nissan's prior adoption and use of the Nissan Marks and
trade dress. For example, upon information and belief,
Defendants have received communications from other
automobile companies and trademark holders that the parts
Defendants are selling come from unauthorized sources and
suppliers, and, thus violate the trademark rights of the
automobile companies and trademark holders.

43. In addition, Defendants know, or reasonably
should know, that when Defendants purchase parts and
accessories bearing the Nissan trademarks from
unauthorized sources and suppliers such as "companies who
supply parts to Nissan-affiliated companies," "former such
suppliers," and "aftermarket parts manufacturers," as
alleged in paragraph 10 of EPI's Complaint against Nissan,
that such parts and accessories are counterfeit.
Defendants have carried out and continue to carry out such
acts with the intent to mislead and deceive consumers.
Defendants know, or reasonably should know, that the
counterfeit parts and accessories they are selling to
Nissan dealers and others will be sold to consumers as
genuine Nissan parts and accessories. In so doing,

Gibson, Dunn &
Crutcher LLP

1 | Defendants have caused irreparable damage to the Nissan
2 | Marks and to the goodwill of Nissan Motor and Nissan N.A.
3 | In addition, Defendants have unjustly enriched themselves
4 | at the expense of Nissan Motor and Nissan N.A.

5 |     44. Nissan N.A. and Nissan Motor exercise great care
6 | in the selection of authorized Nissan dealers and
7 | licensees and exert substantial efforts to ensure the
8 | nature and quality of the goods and services provided by
9 | it and its dealers and licensees under the Nissan Marks.

10 |     45. Defendants are not licensees of Nissan Motor or
11 | Nissan N.A.  The Counterfeit Products imported,
12 | manufactured, promoted, distributed, and sold by
13 | Defendants are of the same type and are intended for the
14 | same purpose and the same class of purchasers of Nissan
15 | Products that are sold through authorized Nissan dealers
16 | and licensees.  Nissan also markets and sells parts and
17 | accessories, and other products that compete with the
18 | Counterfeit Products sold by Defendants. Because Nissan
19 | Motor and Nissan N.A. exercise close supervision of and
20 | set high standards for authorized Nissan dealers and
21 | licensees, Nissan Motor and Nissan N.A. have a strong
22 | interest in preventing unauthorized persons from using the
23 | Nissan Marks, from selling Counterfeit Products, or from
24 | otherwise holding themselves out as authorized Nissan
25 | dealers or licensees.

26 |     46. Further, as alleged above, Nissan regularly
27 | updates and improves upon its car parts in order to make
28 | them both safer and more efficient.  Because Defendants

Gibson, Dunn &
Crutcher LLP

claim to purchase parts from former suppliers, aftermarket suppliers, and other non-authorized sources, it is likely that Defendants sell parts with the "Nissan" name that are not the most current, safe or efficient parts manufactured by Nissan and therefore are not as safe or efficient as parts sold by Nissan N.A.  Nissan is informed and believes that parts sold by defendant EPI bearing the "Nissan" name include parts that were not authorized for sale by Nissan and include parts that Nissan directed not be sold to consumers in the United States.  This constitutes a material difference between the parts sold by plaintiff Nissan N.A. and those sold by Defendants.

47. Defendants' unauthorized use of the Nissan Marks and trade dress and their use of counterfeits of the Nissan Marks and trade dress are likely to cause confusion as to the source and/or sponsorship of Defendants' Counterfeit Products, and dilutes and tarnishes the Nissan Marks.

48. Defendants' conduct is intentionally fraudulent, malicious, willful, and wanton.  As set forth above, Defendants either know, or reasonably should know, that the parts and accessories that they obtain from unauthorized sources and suppliers are counterfeit and violate Nissan's trademark rights. Defendants know, or reasonably should know, that when Defendants purchase parts and accessories bearing the Nissan trademarks from unauthorized sources and suppliers such as "companies who supply parts to Nissan-affiliated companies," "former such

suppliers," and "aftermarket parts manufacturers," as alleged in paragraph 10 of EPI's Complaint against Nissan, that such parts and accessories are counterfeit.

### FIRST CLAIM FOR RELIEF

(FEDERAL TRADEMARK INFRINGEMENT AND COUNTERFEITING UNDER 15 U.S.C. § 1114)

49. Nissan Motor and Nissan N.A. reallege and incorporate herein by reference the allegations set forth above.

50. Despite Nissan Motor's and Nissan N.A.'s well-known prior rights in the Nissan Marks, Defendants have used and continue to use, without Nissan's authorization, the Nissan Marks, or counterfeits, copies, reproductions or colorable imitations thereof in connection with the importation, manufacture, promotion, distribution, and sale of the Counterfeit Products.

51. Defendants' actions constitute trademark counterfeiting and willful infringement of Nissan Motor's and Nissan N.A.'s exclusive rights in the Nissan Marks in violation of 15 U.S.C. § 1114.

52. As set forth above, Defendants' use of the Nissan Marks, counterfeits, copies, reproductions, or colorable imitations thereof was done with the intent to cause confusion, mistake, and to deceive consumers concerning the source and/or sponsorship of Defendants' products.  As set forth above, Defendants have used counterfeits of the Nissan Marks in connection with the Counterfeit Products with the knowledge that the marks are counterfeits and

Gibson, Dunn & Crutcher LLP

1  with the intent to use counterfeits.  Accordingly, this is

2  an exceptional case within the meaning of 15 U.S.C. §

3  1117(a).

4  53. As a direct and proximate result of Defendants'

5  conduct, Nissan Motor and Nissan N.A. have suffered

6  irreparable harm to the valuable Nissan Marks.  Unless

7  Defendants are restrained from further infringement of the

8  Nissan Marks, Nissan Motor and Nissan N.A. will continue

9  to be irreparably harmed.

10  54. Nissan Motor and Nissan N.A. have no adequate

11  remedy at law that will compensate for the continued and

12  irreparable harm it will suffer if Defendants' acts are

13  allowed to continue.

14  55. As a direct and proximate result of Defendants'

15  conduct, Nissan Motor and Nissan N.A. are entitled to the

16  equitable remedy of an accounting for, and a disgorgement

17  of, all revenues and/or profits wrongfully derived by

18  Defendants from their infringing and diluting use of the

19  Nissan Marks and trade dress pursuant to 15 U.S.C. § 1117.

20  **SECOND CLAIM FOR RELIEF**

21  (FALSE DESIGNATION OF ORIGIN OR SPONSORSHIP, FALSE

22  ADVERTISING, AND TRADE DRESS INFRINGEMENT UNDER

23  15 U.S.C. § 1125(a))

24  56. Nissan realleges and incorporates herein by

25  reference the allegations set forth above.

26  57. As set forth above, Defendants have knowingly

27  used the Nissan Marks and trade dress, or counterfeits,

28  reproductions, copies, or colorable imitations thereof, in

Gibson, Dunn &
Crutcher LLP

connection with the Counterfeit Products that Defendants
import, manufacture, promote, distribute, and sell.
Defendants have used counterfeits of the Nissan Marks
knowing that the marks used are counterfeits and with the
intent to use counterfeits of the Nissan Marks.
Defendants' actions render this case exceptional within
the meaning of 15 U.S.C. § 1117(a).

58. Additionally, as alleged above, Defendants
knowingly sell Nissan parts that do not contain a warranty
from Nissan N.A. and Defendants fail to disclose this
material fact to the Nissan dealers and consumers.  Nor do
Defendants disclose in any of their packaging,
advertising, promotional or sales materials, etc. that the
parts they sell contain only a limited warranty, if any at
all.  In addition, Defendants intentionally and routinely
deceive and confuse Nissan dealers and consumers
purchasing parts from Defendants by claiming that such are
parts are "genuine Nissan parts," thereby misleading
consumers to believe that the parts are under warranty and
are affiliated with Nissan N.A.

59. Defendants' use of the counterfeit Nissan Marks
and trade dress alleged above, in addition to Defendants'
failure to disclose that product they advertise as
"genuine Nissan parts" are not warranted or affiliated
with Nissan N.A., is likely to confuse, mislead and
deceive customers, purchasers, and members of the general
public as to the origin, source, sponsorship, affiliation,
quality and potential safety issues of Defendants'

Gibson, Dunn &
Crutcher LLP

1  Counterfeit Products and is likely to cause such people to

2  believe in error that Defendants' Counterfeit Products

3  have been authorized, sponsored, approved, or licensed by

4  Nissan, or that Defendants are in some way affiliated with

5  Nissan.

6      60. Defendants' acts constitute false or misleading

7  descriptions, false advertising, and false designations of

8  the origin and/or sponsorship of Defendants' goods, and

9  constitute trade dress infringement in violation of

10  Section 43(a) of the Lanham Act, as amended, 15 U.S.C. §

11  1125(a).

12      61. By reason of Defendants' actions, Nissan Motor

13  and Nissan N.A. have suffered irreparable harm to the

14  valuable Nissan Marks and trade dress.  Unless Defendants

15  are restrained from their actions, Nissan will continue to

16  be irreparably harmed.

17      62. Nissan Motor and Nissan N.A. have no remedy at

18  law that will compensate for the continued and irreparable

19  harm that will be caused if Defendants' acts are allowed

20  to continue.

21      63. As a direct and proximate result of Defendants'

22  conduct, Nissan is entitled to the equitable remedy of an

23  accounting for, and a disgorgement of, all revenues and/or

24  profits wrongfully derived by Defendants from their

25  infringing and diluting use of the Nissan Marks and trade

26  dress pursuant to 15 U.S.C. § 1117.

27

28

Gibson, Dunn &
Crutcher LLP

## THIRD CLAIM FOR RELIEF

(TRADEMARK AND TRADE DRESS DILUTION

UNDER 15 U.S.C. § 1125(c))

64. Nissan Motor and Nissan N.A. reallege and incorporate herein the allegations set forth above.

65. The Nissan Marks and trade dress have become famous and distinctive worldwide as a result of Nissan Motor and Nissan N.A.'s continuous and exclusive use of them in connection with Nissan Products and services.

66. Because Nissan Products have gained a reputation for superior quality and excellence, the Nissan Marks (which are always used in connection with Nissan Products and services) have gained substantial renown.

67. Despite Nissan Motor's and Nissan N.A.'s well-known prior rights in the Nissan Marks, Defendants have used and continue to use the Nissan Marks and trade dress, and counterfeits thereof, in connection with the importation, manufacture, promotion, distribution, and sale of Defendants' Counterfeit Products.

68. The use by Defendants of the Nissan Marks and trade dress, and counterfeits thereof, has caused and continues to cause injury to and dilution of the Nissan Marks' and trade dress's distinctive quality in violation of Nissan's rights under 15 U.S.C. § 1125(c).

69. As set forth above, Defendants have used and continue to use the Nissan Marks, trade dress, or counterfeits thereof, willfully and with the intent to

1  dilute the Nissan Marks, and with the intent to trade on

2  Nissan Motor's reputation and goodwill.

3      70. As a direct and proximate result of Defendants'

4  conduct, Nissan Motor and Nissan N.A. have suffered

5  irreparable harm to the valuable Nissan Marks and trade

6  dress.· Unless Defendants are restrained from further

7  dilution of the Nissan Marks and trade dress, Nissan Motor

8  and Nissan N.A. will continue to be irreparably harmed.

9      71. Unless Defendants are enjoined, the valuable

10  Nissan Marks and trade dress will continue to be

11  irreparably harmed and diluted.  Nissan Motor and Nissan

12  N.A. have no adequate remedy at law that will compensate

13  for the continued and irreparable harm they will suffer if

14  Defendants' actions are allowed to continue.

15      72. As a direct and proximate result of Defendants'

16  conduct, Nissan Motor and Nissan N.A. are entitled to the

17  equitable remedy of an accounting for, and a disgorgement

18  of, all revenues and/or profits wrongfully derived by

19  Defendants from their infringing and diluting use of the

20  Nissan Marks and trade dress pursuant to 15 U.S.C. § 1117.

21                   **FOURTH CLAIM FOR RELIEF**

22               (COMMON LAW TRADEMARK INFRINGEMENT)

23      73. Nissan Motor and Nissan N.A. reallege and

24  incorporate herein by reference the allegations set forth

25  above.

26      74. Nissan Motor was the first to use the Nissan

27  Marks and trade dress or any marks similar thereto in

28  association with the sale of any product and service.  As

Gibson, Dunn &
Crutcher LLP

1   a result of the continued sale by Nissan Motor and Nissan
2   N.A. of Nissan Products and services under the Nissan
3   Marks, the Nissan Marks and trade dress have become widely
4   known and Nissan Motor has become identified in the public
5   mind as the manufacturer and/or licensor of the products
6   and services to which the Nissan Marks are applied.

7   75. As a result of the experience, care, and service
8   of Nissan Motor and Nissan N.A. in producing Nissan
9   Products and services, Nissan Products and services have
10  become widely known and have acquired a worldwide
11  reputation for excellence. Moreover, the Nissan Marks and
12  trade dress have become associated with Nissan Products
13  and services, and have come to symbolize the Nissan
14  Products' and services' reputation for quality and
15  excellence. As such, the Nissan Marks and trade dress
16  have become inherently distinctive.

17  76. Defendants, with intentional disregard of Nissan
18  Motor's and Nissan N.A.'s rights, as set forth above,
19  continue to import, manufacture, promote, distribute, and
20  sell Counterfeit Products using the Nissan Marks, trade
21  dress, or counterfeits and imitations thereof. Such acts
22  by Defendants have caused and continue to cause confusion
23  as to the source and/or sponsorship of Defendants'
24  products.

25  77. As set forth above, Defendants' acts constitute
26  willful infringement of Nissan Motor's and Nissan N.A.'s
27  exclusive rights in the Nissan Marks and trade dress in
28  violation of the common law.

Gibson, Dunn &
Crutcher LLP

78. By reason of Defendants' actions, Nissan Motor and Nissan N.A. have suffered irreparable harm to the valuable Nissan Marks and trade dress. Unless Defendants are restrained from further infringement of the Nissan Marks and trade dress, Nissan Motor and Nissan N.A. will continue to suffer irreparable harm.

79. Nissan Motor and Nissan N.A. have no remedy at law that will adequately compensate them for the irreparable harm they will suffer if Defendants' conduct is allowed to continue.

## FIFTH CLAIM FOR RELIEF

### (FOR VIOLATION OF CALIFORNIA BUSINESS &
### PROFESSIONS CODE SECTION 17200 and 17500)

80. Nissan Motor and Nissan N.A. reallege and incorporate herein by reference the allegations set forth above.

81. As alleged above, Defendants have violated federal and state laws, including but not limited to, Lanham Act Sections 1114 (1), 1125(a) and 1125(c), 15 U.S.C. § 2301 et seq. and 16 C.F.R. §§ 701.3(a), 702.3. (the "Magnuson-Moss Act"), California Civil Code § 1797.8-1797.86, and New York General Business Law § 218-aa. Additionally, by selling parts that Defendants advertise as "genuine Nissan parts" and failing to disclose that these parts are not warranted by Nissan N.A., Defendants have violated California Civil Code Sections 1770(a)(2) and 1770(a)(3) by "misrepresenting the source, sponsorship, approval or certification of goods or

1  services" and "[m]isrepresenting the affiliation,

2  connection, or association with, or certification by,

3  another."  Civil Code §§ 1770(a)(2), 1770(a)(3).

4      82.  In committing any or all of the acts alleged

5  above, Defendants have engaged in unlawful, unfair or

6  fraudulent business acts or practices within the meaning

7  of Bus. & Prof. Code § 17200.

8      83.  In advertising that they sell "genuine Nissan

9  parts" and failing to disclose that these parts are not

10  warranted by Nissan, Defendants have intentionally engaged

11  in advertising and made statements that are misleading, in

12  violation of Bus. & Prof. Code § 17500.

13      84.  As a result of Defendants' conduct, Defendants

14  have acquired excess earnings, profits and benefits from

15  Nissan Motor and Nissan N.A., customers and the general

16  public.  This unjust enrichment continues to accrue as

17  Defendants continue to engage in their unfair competition

18  and unlawful business acts and practices.

19      85.  Nissan seeks equitable restitution and

20  disgorgement in an amount to be determined at trial as a

21  result of Defendants' unlawful, unfair and fraudulent

22  conduct of Defendants.  Moreover, the actions of the

23  Defendants have caused, and unless enjoined will continue

24  to cause, irreparable injury and damage to Nissan N.A. and

25  Nissan Motor, for which there is no adequate remedy at

26  law.

27      86.  To prevent their unjust enrichment, Defendants

28  should be required to disgorge all of their ill-gotten

Gibson, Dunn &
Crutcher LLP

1  gains in the form of equitable restitution to Nissan Motor
2  and Nissan North America.

3      87. Moreover, Defendants' actions of unfair
4  competition have caused irreparable harm to Nissan Motor
5  and Nissan North America. They will continue to cause
6  such harm to Nissan Motor and Nissan North America unless
7  Defendants are permanently enjoined from continuing their
8  conduct as alleged above.

9  **SIXTH CLAIM FOR RELIEF**

10  (FOR TORTIOUS INTERFERENCE UNDER CALIFORNIA LAW)

11      88. Nissan Motor and Nissan N.A. reallege and
12  incorporate herein by reference the allegations set forth
13  above.

14      89. At all relevant times, Nissan had active business
15  accounts with Nissan dealers, distributors, and suppliers.

16      90. At all relevant times, Defendants were aware that
17  Nissan had business relationships and contractual
18  relationships with the Nissan dealers, distributors and
19  suppliers. Defendants also knew that Nissan N.A. is the
20  authorized and exclusive distributor for Nissan automotive
21  parts.

22      91. Defendants engaged in the acts and violations
23  described above with the intent to wrongfully interfere
24  with or disrupt Nissan's business relationships, and
25  prospective business relationships, with the Nissan
26  dealers, distributors and suppliers. Defendants engaged
27  in this wrongful conduct with the additional intent to
28  deprive Nissan of further business relationships with

Gibson, Dunn &
Crutcher LLP

33

1  prospective customers, dealers, suppliers and

2  distributors.  Defendants' acts and violations were

3  oppressive and malicious.

4  92. Defendants' acts and violations described above

5  have disrupted and interfered with Nissan's business

6  relationships, and prospective business relationships,

7  with existing and potential Nissan dealers, distributors

8  and suppliers.

9  93. Moreover, the actions of each defendant have

10  caused, and unless enjoined will continue to cause,

11  irreparable injury to Nissan N.A. and Nissan Motor, for

12  which there is no adequate remedy at law.

13  **SEVENTH CLAIM FOR RELIEF**

14  (FOR COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501)

15  94. Nissan Motor realleges and incorporates herein by

16  reference the allegations set forth above.

17  95. Nissan Motor is the owner of original works of

18  authorship in the form of the Nissan logos, attached as

19  Exhibit B.  The first logo in Exhibit B is known as the

20  "Brand Symbol"; the second logo in Exhibit B is known as

21  the "Promotional Mark."

22  96. The Brand Symbol was created in 2000 and 2001 in

23  the United States and Japan.  Fitch Inc. is the author of

24  the Brand Symbol under the work made for hire doctrine as

25  it was created by an employee of Fitch Inc. within the

26  scope of his employment.  The Brand Symbol was first

27  published in Japan.

28

Gibson, Dunn &
Crutcher LLP

97. Nissan Motor is the owner of the Brand Symbol,
and Fitch Inc. has assigned any rights to Nissan Motor, in
writing, on or after 2000.

98. The Promotional Mark was created in 1982 in
Japan.  Nissan Motor is the author of the Promotional Mark
under the work made for hire doctrine as it was created by
an employee of Nissan Motor within the scope of his
employment.  The Promotional Mark was first published in
Japan.

99. At all relevant times, Nissan Motor has created
and continues to create original works of authorship in
the form of information sheets and related materials that
accompany Nissan Products.  In particular, the document
identified as G60PT0014, attached hereto as Exhibit C, was
created in 2000 in Japan.  Nissan Motor is the author
under the work made for hire doctrine as it was created by
a Nissan Motor employee within the scope of his
employment.  The document identified as G60PT0015,
attached hereto as Exhibit D, was created in 2001 in
Japan.  Nissan Motor is the author under the work made for
hire doctrine as it was created by a Nissan Motor employee
within the scope of his employment.  The works in Exhibits
C and D were first published in Japan.

100. The Nissan Brand Symbol, Promotional Mark, and
the information sheets in Exhibits C and D are referred to
herein as the "Subject Works."

101. The Subject Works are protected under United
States copyright law, 15 U.S.C. § 102 (and hence

1  "copyrighted" in common terminology) since the moment of
2  their creation because they are original works of
3  authorship fixed in a tangible medium of expression.

4      102. Nissan Motor is and at all times has been the
5  sole proprietor of all right, title, and interest in and
6  to the copyright in the Subject Works.

7      103. The Subject Works are not "United States works"
8  under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, and
9  therefore Nissan Motor need not register its copyright
10  claims in the Subject Works before bringing an
11  infringement action.

12      104. Nissan Motor is informed and believes that
13  Defendants have reproduced the Subject Works in copies,
14  and continue to do so.

15      105. In the course of Defendants distributing
16  purported Nissan replacement parts, Nissan Motor is
17  informed and believes that Defendants have distributed
18  copies of the Subject Works to the public by sale or other
19  transfer of ownership, or by rental, lease, or lending,
20  and continue to do so.

21      106. In the course of Defendants distributing
22  purported Nissan replacement parts, Nissan Motor is
23  informed and believes that Defendants have displayed the
24  Subject Works publicly, and continue to do so.

25      107. Nissan Motor has not authorized Defendants to do
26  any of the activities described in this Claim for Relief.

27

28

Gibson, Dunn &
Crutcher LLP

1   108. Nissan Motor is informed and believes that

2   Defendants have infringed Nissan Motor's copyrights in the

3   Subject Works.

4   109. Nissan Motor is informed and believes that unless

5   enjoined by this Court, Defendants intend to continue

6   their course of conduct and to infringe upon Nissan

7   Motor's copyrights in the Subject Works.

8                    **EIGHTH CLAIM FOR RELIEF**

9            (FOR UNJUST ENRICHMENT UNDER CALIFORNIA LAW)

10  110. Nissan Motor and Nissan N.A. reallege and

11  incorporate herein by reference the allegations set forth

12  above.

13  111. Defendants have benefited and continue to benefit

14  from selling Nissan automotive parts to dealers and

15  customers who incorrectly believe that such parts are

16  covered by the Nissan Warranties.

17  112. Defendants do not incur any expenses in

18  satisfying the Nissan Warranties.

19  113. Defendants are able to sell Nissan automotive

20  parts at a lower price because they do not satisfy the

21  Nissan Warranties.

22  114. Defendants' sales of Nissan automotive parts are

23  at the unfair expense of Nissan, who must either satisfy

24  the Nissan Warranties or risk the loss of goodwill.

25  115. Defendants have been unjustly enriched.

26  WHEREFORE, Nissan Motor and Nissan N.A. respectfully

27  pray for judgment against Defendants as follows:

28

Gibson, Dunn &
Crutcher LLP

1.  Under all claims for relief, that temporary, preliminary, and permanent injunctions be issued enjoining Defendants, their employees, agents, successors and assigns, and all those in active concert and participation with them, and each of them who receives notice directly or otherwise of such injunctions, from:

(a) imitating, copying, or making unauthorized use of any of the Nissan Marks or Nissan's trade dress;

(b) importing, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any product bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of any or all of Nissan's Marks or Nissan's trade dress;

(c) using any simulation, reproduction, counterfeit, copy or colorable imitation of the Nissan Marks or Nissan's trade dress in connection with the importation, promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any product, in such fashion as to relate or connect, or tend to relate or connect, such product in any way to Nissan, or to any goods sold, manufactured, sponsored or approved by, or connected with Nissan;

(d) using any false designation of origin or false description (including, without limitation, any letters or symbols and the Nissan Parts Numbering System), or performing any act, which can, or is likely to, lead members of the trade or public to believe that any product

Gibson, Dunn &
Crutcher LLP

manufactured, distributed or sold by Defendants is in any manner associated or connected with Nissan, or is sold, manufactured, licensed, sponsored, approved or authorized by Nissan;

(e) failing to disclose that the parts sold by Defendants are not warranted by Nissan N.A. or affiliated with Nissan N.A.;

(f) transferring, consigning, selling, shipping or otherwise moving any goods, packaging or other materials in Defendants' possession, custody or control bearing a design or mark substantially identical to any or all of the Nissan Marks or Nissan's trade dress;

(g) engaging in any other activity constituting unfair competition with Nissan, or constituting an infringement of any or all of the Nissan Marks, or of Nissan's rights in, or to use or exploit, any or all of Nissan's Marks or Nissan's trade dress;

(h) transferring, moving, returning, destroying, or otherwise disposing of any Counterfeit Products, computer tapes or disks, business records, or documents relating in any way to the manufacture, importation, acquisition, distribution, advertising, or sale of the Counterfeit Products;

(i) instructing, assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (g) above;

Gibson, Dunn &
Crutcher LLP

39

(j) continuing their tortious interference with Nissan's existing business relationships with dealers, suppliers and customers, as well as its prospective business relationships with dealers, suppliers and customers;

(k) engaging in unfair competition as described above;

(l) selling obsoleted automotive parts bearing the Nissan Mark; and

(m) reproducing, distributing, or publicly displaying the Subject Works or any substantially similar copies.

2. Under the First Claim for Relief, for an order requiring the United States Marshal for this District and/or any state, county, or local law enforcement authorities in this District, assisted by Nissan's counsel and representative, to seize and impound any and all of the Counterfeit Products and copies of the Subject Works described in this Complaint at Defendants' places of business, as well as all business records related thereto;

3. Under all Claims for Relief, for an order requiring Defendants to file with the Court and provide to Nissan an equitable accounting, disgorgement and equitable restitution of all revenues and/or profits wrongfully realized by Defendants through the use of the Nissan Marks, any counterfeits thereof, and copies of the Subject Works;

Gibson, Dunn &
Crutcher LLP

4.   For an order directing that Defendants deliver for destruction all products, labels, tags, signs, prints, packages, videos, and advertisements in their possession or under their control, bearing any or all of the Nissan Marks, Nissan's trade dress, any simulation, reproduction, counterfeit, copy or colorable imitation thereof, copies of the Subject Works, and all plates, molds, matrices and other means of making the same, pursuant to 15 U.S.C. § 1118 and 17 U.S.C. § 503.

5.   For an order directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any product manufactured, sold or otherwise circulated or promoted by Defendants is authorized or warranted by Nissan or related in any way to Nissan's products.

6.   For an order directing that Defendants file with the Court and serve upon Nissan's counsel within thirty (30) days after entry of such judgment, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the above.

7.   For an award of Nissan's costs and disbursements incurred in this action, including Nissan's reasonable attorneys' fees.

8.   For an order permitting Nissan and/or auditors for Nissan to audit and inspect the books and records of Defendants for a period of six months after entry of final relief in this matter to determine the scope of Defendants' past use of the Nissan Marks and copies of the

Gibson, Dunn &
Crutcher LLP

1   Subject Works, including all revenues and sales related to

2   Defendants' use of the

3   Nissan Marks and copies of the Subject Works, as well as

4   Defendants' compliance with orders of this Court.

5        9.   For such other and further relief as the Court

6   may deem just and proper.

7   DATED:   July |ᒉ|, 2003

8
                               PETER SULLIVAN
9                              GLENN K. BEATON
                               THERESA M. MELSON
10                             GIBSON, DUNN & CRUTCHER LLP

11
                               GREGORY D. PHILLIPS
12                             SCOTT R. RYTHER
                               HOWARD, PHILLIPS, & ANDERSEN,
13                             P.C.

14
                               By: *Glen K. Beaton*/TMM
15

16                                  Glenn K. Beaton

17                             Attorneys for NISSAN NORTH
                               AMERICA INC., a California
18                             corporation and NISSAN JIDOSHA
                               KABUSHIKI KAISHA dba NISSAN
19                             MOTOR CO., LTD. a Japanese
                               Corporation
20

21

22   60098053_31.DOC

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

ORIGINAL

**FILED**

LOS ANGELES SUPERIOR COURT

FEB 2 5 2002

JOHN A. CLARKE

BY P. COOK, DEPUTY

1  | H. KENNETH KUDON
   | [Pro Hac Vice Application To Be Filed]
2  | KUDON LAW FIRM
   | Two Old Creek Court
3  | Potomac, Maryland 20854
   | Telephone: (301) 279-5634
4  | Facsimile: (301) 294-6407

*... assigned to Judge*

5  | MICHAEL D. YOUNG (State Bar No. 120787)
   | NICOLE C. RIVAS (State Bar No. 179337)
6  | JAN C. MORIMOTO (State Bar No. 197143)
   | **WESTON, BENSHOOF, ROCHEFORT,**
7  |    **RUBALCAVA & MacCUISH LLP**
   | 333 South Hope Street, Sixteenth Floor
8  | Los Angeles, California 90071
   | Telephone: (213) 576-1000
9  | Facsimile: (213) 576-1100

10 | Attorneys for Plaintiff EUROPACIFIC PARTS,
   | INTERNATIONAL, INC. t/a S.A.V.E.

12 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

13 | FOR THE COUNTY OF LOS ANGELES

15 | EUROPACIFIC PARTS,           )  Case No.    PC265623
   | INTERNATIONAL, INC. t/a S.A.V.E.,   )
16 |                             )  COMPLAINT FOR:
   |            Plaintiff,        )
17 |                             )  VIOLATIONS OF THE
   |     v.                      )  CARTWRIGHT ACT (B&P §§ 16720,
18 |                             )  16727); UNFAIR COMPETITION
   | NISSAN NORTH AMERICA, INC., and )  (B&P § 17200); INTERFERENCE
19 | DOES 1 through 100, Inclusive,  )  WITH PROSPECTIVE ECONOMIC
   |                             )  ADVANTAGE; AND TRADE LIBEL,
20 |            Defendant.        )  DISPARAGEMENT; DEMAND FOR
   | _____ )  JURY TRIAL

23 |        Plaintiff Europacific Parts International, Inc. t/a S.A.V.E. (hereinafter "EPI"

24 | complains against the defendants, as follows:

25 |                    <u>JURISDICTION AND VENUE</u>

26 |        1.    This complaint is filed and this action is instituted under, inter alia, the

27 | Cartwright Act, Cal. Bus. & Prof. Code, §§ 16720 et seq., to recover treble damages, injunctive

28 | relief, and costs, including reasonable attorneys' fees, from the defendants for the injuries EPI

WESTON BENSHOOF ROCHEFORT, RUBALCAVA MACCUISH LLP
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071
(213) 576-1000

---

1

1    has suffered and will continue to suffer as a consequence of defendants' violations of Sections

2    16720 (a-c), 16726, and 16727 of the Cartwright Act.

3              2.    Nissan North America, Inc. (hereinafter "Nissan") has its headquarters,

4    offices and principal place of business in Gardena, California, within this County. The alleged

5    violations of law and unlawful acts described in this complaint have been created and carried

6    on, in part, in this County.

### PLAINTIFF

7

8              3.    EPI, the plaintiff herein, is a California corporation with its headquarters,

9    office and principal place of business in Irvine, California. EPI is engaged in the distribution

10   of replacement foreign car parts including a wide assortment of replacement parts for Nissan

11   automobiles.

### DEFENDANTS

12

13             4.    Nissan, a defendant herein, is a California corporation with its principal

14   place of business and headquarters office in Gardena, California. Nissan is engaged, among

15   other things, in the distribution of Nissan automobiles and replacement parts for Nissan

16   automobiles to a nationwide network of Nissan dealers.

17             5.    The true names and capacities, whether individual, corporate, associate or

18   otherwise, of defendants Does 1 through 100, inclusive, are presently unknown to EPI who

19   therefore sues said defendants by such fictitious names. EPI is informed and believes, and on

20   that basis alleges, that Does 1 through 100, inclusive, are in some manner legally responsible

21   and culpable in connection with the matters alleged below. EPI will seek leave of Court to

22   amend this complaint to identify the true names and capacities of the fictitiously named

23   defendants when the same have been ascertained.

24             6.    Defendants herein were at all relevant times acting as agents, principals,

25   partners, joint venturers, employees and servants for each other and that all acts alleged against

26   Defendants herein were undertaken in the course and scope of said agency and employment and

27   that each defendant is legally responsible and culpable for the acts and omissions of all other

28   defendants.

WESTON BENSHOOF ROCHEFOI   BALCAVA MacCUISH LLP
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071
(213) 576-1000

2

## CO-CONSPIRATORS

7.    Nissan dealers in the United States who have agreed under compulsion from Nissan to (a) refrain from purchasing replacement parts for Nissan automobiles from EPI or others or (b) to purchase such parts only from Nissan, and dealers and distributors located outside the United States who have agreed under compulsion from Nissan and/or others acting at its behest to refrain from selling such parts to EPI, have participated as co-conspirators with defendants in the violations of law and tortious conduct hereinafter alleged, and have performed acts and made statements in furtherance thereof.

## REPLACEMENT PARTS FOR NISSAN AUTOMOBILES

8.    Nissan-affiliated companies manufacture Nissan automobiles. As the designer and manufacturer of Nissan automobiles, Nissan-affiliated companies establish specifications and standards for Nissan parts. The specifications and standards for original parts used in manufacturing the vehicles and replacement parts used in performing service and repairs to the vehicles are generally the same. Automobile manufacturers that are not affiliated with Nissan do not manufacture or market parts for Nissan automobiles. Likewise, Nissan-affiliated companies do not manufacture or market parts for makes of automobiles they do not manufacture or distribute. Nissan-affiliated companies manufacture certain parts for Nissan automobiles. Most of these parts are "captive parts" that are not made available to competitors of Nissan-affiliated companies. Nissan-affiliated companies also purchase from original equipment manufacturers ("OEM"), parts that purport to conform to their specifications and standards. Nissan parts are generally incompatible with and not ready substitutes for parts designed for other makes of automobiles.

9.    Any company seeking to compete effectively against Nissan in sales of replacement parts to Nissan dealers in the United States at minimum would have to offer for sale a sufficiently wide assortment of replacement parts, both captive and non-captive, so Nissan dealers would regard that company as a practical source for these parts.

10.    EPI has been Nissan's most significant competitor in sales of replacement parts to Nissan dealers in the United States. EPI has developed various supply sources for

3

WESTON BENSHOOF ROCHEFORT, BALGAYA MacCUISH LLP<br>333 South Hope Street, Sixteenth Floor<br>Los Angeles, California 90071<br>(213) 576-1000

replacement parts for Nissan automobiles including, among others, companies who supply parts to Nissan-affiliated companies; former such suppliers; aftermarket parts manufacturers; and Nissan distributors and dealers. Nissan refuses to sell parts to competitors such as EPI. Therefore, the only potential sources for "captive" service parts have been dealers and distributors of Nissan and/or Nissan-affiliated companies.

## FIRST CAUSE OF ACTION

### Violation of Cartwright Act, B & P Code § 16720 et seq.

### (Against All Defendants)

11.     Paragraphs 1 through 10 of this complaint are incorporated by reference as if fully set forth herein.

12.     Beginning around 1997, Nissan's high prices presented EPI with the opportunity to compete against Nissan by offering for sale to Nissan dealers in the United States replacement parts for Nissan automobiles. EPI generally offered lower prices, favorable terms, and better service than Nissan. As a result, Nissan dealers preferred to buy parts from EPI, and EPI began to take sales of replacement parts away from Nissan.

13.     Nissan requires Nissan dealers to purchase all replacement parts from Nissan. Until recently, however, pressure upon dealers to purchase parts only from Nissan was sporadic because Nissan did not experience any serious competitive threat.

14.     Beginning at least as early as 2000, however, Nissan recognized EPI as a serious competitive threat. At or about that time and continuing through the present, Nissan and its co-conspirators have engaged in a combination or conspiracy to create and carry out unreasonable restrictions, prevent competition, and increase prices in the relevant market defined below, in violation of Section 16720 (a-c) and 16726 of the Cartwright Act. The primary purpose, objective and effect of this combination and conspiracy has been to cut off EPI's supply of "captive" replacement parts for Nissan automobiles, fence out EPI and any other actual or potential competitors from, and foreclose competition in, the relevant market. This combination or conspiracy is continuing and will continue unless the injunctive relief hereinafter requested is granted.

WESTON BENSHOOF ROCHEFOR   BALCAVA MACCUISH LLP
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071
(213) 576 1000

15.     In furtherance of the aforesaid combination and conspiracy, defendants and their co-conspirators have done those things they combined or conspired to do including, among others, the following:

a.     On information and belief, Nissan has traced and/or caused others to trace and interdict the supplies of "captive" parts manufactured by Nissan-affiliated companies for Nissan automobiles that EPI offered for sale and sold to Nissan dealers.

b.     Nissan field representatives have engaged in surveillance of Nissan dealer Parts Departments and inventories to discover and "correct" dealers found to be stocking parts purchased from EPI and other competitors of Nissan.

c.     Nissan has interpreted and enforced the Nissan Dealer Agreement as one requiring Nissan dealers to agree to buy and sell replacement parts only from Nissan in order to obtain Nissan automobiles; to this end, when a dealer has been deficient in this requirement, indicating that the dealer is in violation, Nissan has requested and obtained the dealer's commitment to purchase replacement parts only from Nissan, given the dealer an opportunity to cure the violation, and then followed up by monitoring the dealer's parts shelves and bins to insure the dealer is in compliance.

d.     Through the foregoing and other threats and tactics, including, among others, the threat of loss or nonrenewal of the dealership franchise, Nissan has coerced Nissan dealers to purchase replacement parts for Nissan automobiles only from Nissan, or no longer to purchase such parts from EPI or any other Nissan competitor; and

e.     Nissan disparaged the quality or characteristics of parts offered for sale by EPI.

**THE RELEVANT PRODUCT/SERVICE MARKET**

16.     The relevant product/service market consists of the distribution and sale of replacement parts for Nissan automobiles to Nissan dealers.  There are in excess of 1000 Nissan dealers located in California and throughout the United States, and they comprise a vast marketplace.  As previously alleged, replacement parts for Nissan automobiles are generally incompatible with other makes of automobiles.  Thus, they are not readily interchangeable with

WESTON BENSHOOF ROCHEFORT, RUBALCAVA MACCUISH LLP
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071
(213) 576-1000

1  replacement parts for other automobile makes. Effective competition for such sales requires a

2  competitor to offer a wide assortment of these parts and prompt delivery. Nissan dealers

3  recognize EPI and Nissan as the principal competitors in this market. Likewise, Nissan and EPI

4  have recognized each other as principal competitors in this market. To this end, both have

5  offered a distinct, specialized cluster of products and services to Nissan dealers. They have

6  collected pricing data on each other, and their competing products have exhibited price

7  sensitivity. Nissan accounts for upwards of 95% of sales in the relevant market.

8           17.    Nissan dealer Parts Departments transfer or sell most of the replacement

9  parts they buy to their Service Departments which consume the parts in performing service upon

10  Nissan automobiles. Hence, Nissan dealers are the relevant consumers herein. Few retail

11  Nissan owners perform their own service and repairs; therefore, they are not consumers of

12  replacement parts for Nissan automobiles. Rather, they are consumers of automobile service,

13  a distinctly separate market from the relevant market herein, in which competitive decisions to

14  do business with a certain Nissan dealer or independent service shop or garage (hereinafter

15  "independent shop") are based predominantly upon service quality (i.e., was the repair done

16  properly the first time?), overall cost of the repair (in which labor is generally the overriding

17  component), and other factors such as service shop location and timeliness of service.

18           18.    The relevant product/service market does not include independent shops

19  that service Nissan automobiles. This is a separate market from the relevant market defined

20  above. Nissan does not sell replacement parts to independent shops. The competitors who

21  serve the independent shops market are primarily local or regional automobile parts supply

22  houses who carry small selections of parts for Nissan automobiles. Nissan dealers maintain

23  significantly greater inventories of replacement parts for Nissan automobiles than do

24  independent shops. Therefore, Nissan dealers tend to order replacement parts less frequently,

25  but on a greater scale in terms of assortment and quantity, than independent shops. The cost of

26  serving independent shops, too, tends to be greater than serving Nissan dealers because, among

27  other things, order taking is more time consuming, invoicing more costly due to the smaller size

28  but greater quantity of orders, and delivery expense higher. Further, many independent shops

WESTON BENSHOOF ROCHEFO,   JBALCAVA MACCUISH LLP
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071
(213) 576-1000

6

1 are smaller and less well established than Nissan dealers; therefore, some are credit problems.

2    ## THE RELEVANT GEOGRAPHIC MARKET

3        19.    The United States is the area of effective competitive overlap between and

4 among Nissan, EPI and any other distributors in the relevant product/service market. The

5 demand for prompt deliveries, ready availability, and wide assortments together with freight

6 costs, customs regulations and other economic factors serve as barriers to expanding the

7 geographic scope of the relevant market beyond national borders.

8    ## ANTICOMPETITIVE EFFECTS

9        20.    The aforesaid unlawful combination or conspiracy has had, and continues

10 to have, the following anticompetitive effects in the relevant market defined above, including,

11 among others:

12        a.    Prices of replacement parts for Nissan automobiles purchased by

13 Nissan dealers have been raised or stabilized;

14        b.    Nissan dealers have been deprived of the benefits of free and open

15 competition, and have informed EPI that they will lose their franchise if they buy EPI's parts;

16        c.    Competition between and among Nissan, EPI and any others who

17 compete in the relevant market has been substantially lessened and unreasonably restricted;

18        d.    Artificial barriers have been erected to effective entry into the

19 relevant market; and

20        e.    Nissan has maintained its monopoly of the relevant market.

21        21.    As a result of the foregoing, EPI has suffered, continues to, and for the

22 reasonably foreseeable future will suffer injury to its business and property in an amount that

23 has not yet been determined, but in the millions of dollars.

24    ## SECOND CAUSE OF ACTION

25    ### Violation of Cartwright Act, B & P Code § 16720 et seq.

26    ### (Against All Defendants)

27        22.    Paragraphs 1 through 21 of this complaint are incorporated by reference

28 as if fully set forth herein.

---

7

385468.1

WESTON BENSHOOF ROCHEFORT · BALCAVA MacCUISH LLP
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071
(213) 576-1000

23.    Beginning at least as early as 2000 and continuing through the present, defendants and co-conspirators have combined or conspired to monopolize the relevant market defined above in violation of Section 16720 et seq. of the Cartwright Act.

24.    In furtherance of their unlawful conduct and with the intent, purpose and effect of controlling prices and forestalling competition in such relevant market, defendants and their co-conspirators have done, among others, the acts referred to herein above in Paragraph 15 of this complaint.

25.    As a result of the foregoing, EPI has suffered, continues to and for the reasonably foreseeable future will suffer injury to its business and property in an amount that has not yet been determined, but in the millions of dollars.

## THIRD CAUSE OF ACTION

### Violation of Cartwright Act, B & P Code § 16727 et seq.

### (Against All Defendants)

26.    Paragraphs 1 through 25 of this complaint are incorporated herein by reference as if fully set forth herein.

27.    Beginning at a date unknown to EPI but at least as early as 2000, and continuing through the present, Nissan and Nissan dealers have entered into a tying arrangement in violation of Section 16727 of the Cartwright Act. The essential term of this arrangement is and has been that Nissan has made the sale of Nissan automobiles and/or Nissan dealerships (tying products) to Nissan dealers upon the understanding that such dealers shall not purchase, use or deal in replacement parts for Nissan automobiles (tied product) of a competitor of Nissan, which includes EPI.

28.    Nissan possesses sufficient economic power in the tying product(s) market to impose a tying arrangement upon Nissan dealers. Through the conduct alleged above, Nissan has exploited its market power to force the tying arrangement upon Nissan dealers, substantially lessening competition and maintaining its monopoly of the relevant market defined above.

29.    As a result of the foregoing, EPI has suffered, continues to, and for the reasonably foreseeable future will suffer injury to its business and property in an amount that

WESTON BENSHOOF ROCHEFOR, .UBALCAVA MacCUISH LLP
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071
(213) 576 1000

8

385468.1

1    has not yet been determined, but in the millions of dollars.

2    <u>FOURTH CAUSE OF ACTION</u>

3    Violation of Unfair Competition Act, B & P Code § 17200 et seq.

4    <u>(Against All Defendants)</u>

5       30.    Paragraphs 1 through 29 of this complaint are incorporated herein by

6    reference as if fully set forth herein.

7       31.    The acts of defendants and their co-conspirators described in preceding

8    paragraphs of this complaint including without limitation Paragraph 15 constitute unlawful or

9    unfair business practices in violation of California's Unfair Competition Act, Cal. Bus. & Prof.

10    Code, §§ 17200 et seq.

11       32.    EPI seeks injunctive and restitutive relief under Business and Professions

12    Code Section 17200 et seq. to remedy the unfair, unlawful and/or fraudulent business practices

13    described herein, including the following:

14       a.    Restitution and/or disgorgement of unlawful profits obtained by

15    defendants from its unlawful, unfair and fraudulent practices as described herein;

16       b.    An order requiring defendants to cease the conduct alleged in

17    Paragraph 15 above;

18       c.    An order requiring defendants to cease any and all efforts to prevent

19    EPI and any other entity from purchasing Nissan products, including replacement parts for

20    Nissan automobiles and "captive" parts for Nissan automobiles;

21       d.    An order requiring defendants to notify all of its subsidiaries, Nissan

22    dealers, and distributors and/or subdistributors of Nissan products (including, without limitation,

23    all Nissan dealers in the United States) that they may, without any adverse repercussions,

24    reactions, or conduct from defendants, (a) sell Nissan products to EPI and any other entity

25    desiring to purchase Nissan products, and/or (b) buy Nissan products from EPI and any other

26    entity desiring to sell Nissan products to them; and

27       e.    An order requiring defendants to publicize that EPI's products are

28    not "counterfeits" or otherwise inferior to the products marketed by Nissan, but are in fact

WESTON BENSHOOF ROCHEFO.   JIBALCAVA MACCUISH LLP
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071
(213) 576-1000

9

1  comparable to products marketed by Nissan.  Said publicity shall be approved by EPI in

2  advance, and shall be distributed at least as widely and as visibly as defendants' original

3  disparaging comments about EPI's products.

## FIFTH CAUSE OF ACTION

### Interference with Prospective Economic Advantage

### (Against All Defendants)

7  33.  Paragraphs 1 through 32 of this complaint are incorporated by reference

8  as if fully set forth herein.

9  34.  EPI has established business relations with Nissan dealers.  All Nissan

10  dealers in the United States are prospective customers of EPI.

11  35.  At all relevant times, defendants have been aware of EPI's actual and/or

12  prospective business relationships with such Nissan dealers.

13  36.  By exploiting their inordinate leverage over the award of Nissan

14  dealerships (a market in which EPI does not and could not reasonably compete), and by

15  disparaging the quality of products sold by EPI, defendants have intentionally and wrongfully

16  interfered with EPI's prospective economic relationships with the Nissan dealers for the

17  distribution and sale of replacement parts for Nissan automobiles.  To that end, defendants have

18  done, among others, those things alleged in Paragraph 15 of this complaint.

19  37.  Defendants' interference with EPI's actual and prospective relationships

20  has been and is intentional and wrongful.  It constitutes unfair conduct outside the realm of

21  legitimate business transactions.

22  38.  As a result of the foregoing, EPI has suffered, continues to, and for the

23  reasonably foreseeable future will suffer damage in an amount that has not yet been determined.

24  ///

25  ///

26  ///

27  ///

28  ///

WESTON BENSHOOF ROCHEFO   JBALCAVA MacCUUSH LLP
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071
(213) 576-1000

385468.1

WESTON BENSHOOF ROCHEFORT RUBALCAVA MacCUISH LLP
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071
(213) 576-1000

## SIXTH CAUSE OF ACTION

### Trade Libel, Disparagement, Etc.

### (Against Defendant Nissan)

### (And Does 1-50, Inclusive)

39.     Paragraphs 1 through 38 of this complaint are incorporated by reference as if fully set forth herein.

40.     Nissan has engaged in trade slander, libel and disparagement by wilfully and maliciously making statements to Nissan dealers that EPI's products are "counterfeits" or otherwise inferior to the products marketed by Nissan.

41.     As a result of the foregoing, EPI has suffered, continues to, and for the reasonably foreseeable future will suffer damage in an amount that has not yet been determined.

### PRAYER FOR RELIEF

WHEREFORE, EPI requests the following relief:

1.     That the conduct alleged in the first through third causes of action be adjudged to be in violation of Sections 16720 and/or 16727 of the Cartwright Act;

2.     That the plaintiff recover three times the damages determined to have been sustained by it, and that joint and several judgments be entered against defendants, and each of them for the amount determined for violations of the antitrust laws, as alleged in the first through third causes of action in an amount to be proven at trial, but in excess of $11 million (prior to trebling);

3.     That as to the fourth cause of action, the Court order the following injunctive and restitutive relief under Business and Professions Code Section 17200 et seq.:

a.     Restitution of moneys obtained by defendants from its unlawful, unfair and fraudulent practices in an amount to be proven at trial;

b.     An order requiring defendants to cease the conduct alleged in Paragraph 15 above;

c.     An order requiring defendants to cease any and all efforts to prevent EPI and any other entity from purchasing Nissan products, including replacement parts for

11

1   Nissan automobiles and "captive" parts for Nissan automobiles;

2           d.      An order requiring defendants to notify all of its subsidiaries, Nissan

3   dealers, and distributors and/or subdistributors of Nissan products (including, without limitation,

4   all Nissan dealers in the United States, that they may, without any adverse repercussions,

5   reactions, or conduct from defendants, (a) sell Nissan products to EPI and any other entity

6   desiring to purchase Nissan products, and/or (b) buy Nissan products from EPI and any other

7   entity desiring to sell Nissan products to them; and

8           e.      An order requiring defendants to publicize that EPI's products are

9   not "counterfeits" or otherwise inferior to the products marketed by Nissan, but are in fact

10  comparable to products marketed by Nissan.  Said publicity shall be approved by EPI in

11  advance, and shall be distributed at least as widely and as visibly as defendants' original

12  disparaging comments about EPI's products.

13          4.      That  plaintiff recover damages in the amount sustained by it for

14  defendants' wrongful interference with actual and/or prospective economic advantage, as

15  alleged in the fifth cause of action,  and that joint and several judgments be entered against

16  defendants, and each of them, in an amount to be proven at trial.

17          5.      That the plaintiff recover damages in the amount sustained by it for

18  Nissan's trade slander, libel and disparagement, as alleged in the sixth cause of action, and that

19  judgment be entered against defendants for the amount determined at trial.

20          6.      That the plaintiff recover punitive damages in accordance with proof at

21  trial, with respect to the fifth and sixth causes of action, and that joint and several judgments be

22  entered against the defendants, and each of them, for the amount determined.

23          7.      That plaintiff recover the costs of this suit, together with a reasonable

24  attorneys' fee, as well as prejudgment and post judgment interest.

25          8.      That plaintiff have such other and further relief as the nature of this case

26  may require and the Court may deem just and proper.

27  ///

28  ///

385468.1

## JURY DEMAND

1
2          Plaintiff demands trial by jury on all causes of action as to which plaintiff is

3    entitled to jury trial.

4

5    DATED: February 25, 2002          H. KENNETH KUDON
                                       KUDON LAW FIRM
6
                                       MICHAEL D. YOUNG
7                                      NICOLE C. RIVAS
                                       JAN C. MORIMOTO
8                                      WESTON, BENSHOOF, ROCHEFORT,
                                         RUBALCAVA & MacCUISH LLP
9

10

11    _____
                                       Michael D. Young
12
                                       Attorneys for Plaintiff
13                                     EUROPACIFIC PARTS, INTERNATIONAL, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13



EXHIBIT B






**SRS エアバッグ**

SRS エアバッグを修理する前に、日産自動車発行の追補版「乗員拘束装置(SRS)」をよくお読み下さい。

⚠ 警告



**SRS AIRBAG**

**PRECAUTION**

Be sure to read this section before commencing work.

For proper servicing of the SRS (Supplemental Restraint System), please consult the Service Manual "SRS Air Bag", published separately and issued by Nissan Motor Co., Ltd. for the relevant vehicle model.

⚠ Warning

**Handling of Air Bag Module**




**SRS AIRBAG**

**PRÉCAUTIONS**

Lire le Manuel de réparation relevant avant tout travail.

Pour effectuer les interventions sur le système de retenue gonflable SRS correctement, lire attentivement le Manuel de réparation véhicule concerné, publié par Nissan Motor Co., Ltd.

⚠ Avertissement

**Traitement du module de coussin gonflable**



**SRS AIRBAG**

**VORSICHTSMASSNAHMEN**

Bitte lesen Sie diese Warnanweisung vor Beginn der Arbeit.

⚠ Warnung

**Handhabung des Airbag-Moduls**



NISSAN MOTOR CO., LTD.

# EXHIBIT C



**A**

**SRSエアバッグ**

## 作業前に必ずお読み下さい

SRSエアバッグを整備する際は、日産自動車株式会社発行の該当車専用の「整備要領書」を必ずお読み下さい。

### ⚠警告

・誤った整備作業により、前方及び側方向からの衝突時にエアバッグが作動せず、乗員が怪我や重大な障害を受ける恐れがありますので、整備作業はエアバッグの整備要領について教育を受けた日産販売会社で実施して下さい。
・誤った作業手順でシステムの整備を実施すると、エアバッグが不用意に作動したり、システムが正常に作動せず重大な障害を受ける原因になります。
・SRSエアバッグシステムに関する整備を行う場合は、キースイッチをOFFにし、バッテリーのプラス、マイナス両端子を外した後、3分間以上放置（システムに蓄えられた電気量を自己放電）してから作業を実施してください。

・取り付け時の注意
1. 前輪を直進状態に揃える。
2. 右回転始点より左に約2.5回転戻し、マーク（Ⅹ）を合わせる。
・本製品は、分解、給油、修理不可。

**SRS AIRBAG**

## PRÉCAUTIONS

Lire le Manuel de réparation suivant avant tout travail

Pour effectuer les interventions sur le système de coussin gonflable SRS correctement, lire attentivement le Manuel de réparation du véhicule concerné, publié par Nissan Motor Co., Ltd.

### ⚠ Avertissement

・Les passagers courent un risque de blessures ou d'autres dangers graves en cas de collision frontale ou de côté si le système de coussin gonflable SRS ne fonctionne pas en raison d'une intervention mal effectuée. Pour cela, toute intervention doit être exclusivement effectuée par les techniciens des concessionnaires Nissan agréés qui ont été formés aux procédures correctes à utiliser.
・Si dans le cadre de l'entretien courant les procédures utilisées pour la pose et la dépose du système de coussin gonflable SRS sont incorrectes, le coussin gonflable pourra se déployer accidentellement ou mal fonctionner, entraînant ainsi des dangers graves.
・Lors de la pose ou de la dépose du système de coussin gonflable SRS, couper le contact (clé en position OFF), débrancher les câbles à la borne positive et à la borne négative de la batterie et attendre au moins 3 minutes pour permettre à l'électricité résiduelle de s'autodécharger avant de commencer le travail.

・Attention: avant le montage:
Aligner les roues avant en ligne droite.
À partir de la position extrême droite, tourner vers la gauche d'environ 2,5 tours.
Aligner les deux repères (Ⅹ).
・Pas de pièces utilisables à l'intérieur.
Défense de démonter ou de toucher.

**SRS AIRBAG**

## PRECAUTION

Be sure to read this notice before commencing work.

For proper servicing of the Supplemental Restraint System (SRS) "Air Bag", please make sure to read the Service Manual issued by Nissan Motor Co., Ltd. for the relevant vehicle model.

### ⚠ Warning

・To avoid rendering the SRS inoperative, which could increase the risk of personal injury or death in the event of a collision from the front or side direction which would result in air bag deployment, all maintenance must be performed by an authorized Nissan dealer or repair facility whose technicians have been trained in correct SRS service procedures.
・Improper maintenance, including incorrect removal and installation of the SRS, can lead to personal injury caused by unintentional activation of the system.
・When removing or re-installing the SRS air bag, turn the key switch off, pull out the plus and minus terminals of the battery, and leave the vehicle as it is for more than three minutes to self-discharge residual electricity, before starting operation.

・Attention: Before assembly:
Align front wheels straight ahead. Turn left 2.5 revolutions from the right end position. Align the two marks (Ⅹ).
・No serviceable parts inside. Do not disassemble or tamper with.

**SRS AIRBAG**

## VORSICHTSMASSNAHMEN

Bitte lesen Sie diese Wartungsanleitung vor Beginn der Arbeit

Bei Wartung des zusätzlichen Rückhaltesystems "SRS Airbag" unbedingt die entsprechenden Abschnitte in der Bedienungsanleitung für den betreffenden Fahrzeugtyp durchlesen, die von Nissan Motor Co., Ltd. herausgegeben wurde.

### ⚠ Warnung

・Um zu verhindern, daß das Airbag-System aufgrund falscher Wartung funktionsunfähig wird, was zu einem erhöhten Risiko von Personenschäden oder anderen Gefahren für die Fahrzeuginsassen bei Kollisionen von vorn oder von der Seite führt, bei denen das Airbag-System normalerweise ausgelöst wird, müssen alle Wartungsarbeiten ausschließlich von einem autorisierten Nissan-Händler ausgeführt werden, dessen Techniker gemäß den richtigen Wartungsarbeiten für das Airbag-System ausgebildet sind.
・Unsachgemäßer Ausbau und Einbau der Airbag-Komponenten können zum unbeabsichtigten Auslösen oder zu Fehlfunktionen des Systems führen, die möglicherweise gefährlich sind.
・Vor dem Einbau oder Ausbau des Airbag-Systems den Zündschlüssel ausschalten, die Klemmen vom Plus- und Minuspol der Batterie abtrennen und das Fahrzeug mindestens 3 Minuten stehenlassen, damit sich noch vorhandene Elektrizität selbsttätig entlädt, ehe mit den Arbeiten begonnen wird.

・Achtung: Beachten Sie vor dem Zusammenbau:
Richten Sie die Vorderräder gerade aus.
Vom rechten Endanschlag aus ungefähr 2,5 Umdrehungen nach links drehen.
Richten Sie die beiden Markierungen Ⅹ zueinander aus.
・Keine austauschbaren Teile enthalten. Nicht zerlegen oder verändern.



**NISSAN MOTOR CO, LTD.**

G60PT0015

# EXHIBIT D

# CERTIFICATE OF SERVICE

I, Laura Rocha hereby certify as follows:

I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 333 South Grand Avenue, Los Angeles, CA 90071, in said County and State; I am employed in the office of Theresa M. Melson, a member of the bar of this Court, and at her direction, on July 14, 2003, I served the following:

**SIXTH AMENDED COMPLAINT FOR TRADEMARK AND COPYRIGHT COUNTERFEITING AND INFRINGEMENT AND UNJUST ENRICHMENT**

on the interested parties in this action, by:

☑   **Service by Hand Delivery:**  delivering true and correct copy thereof and sufficient envelope(s) addressed to the attorney(s) of record, addressed as follows:

Michael D. Young
Weston, Benshoof, Rochefort,
   Rubalcava & MacCuish LLP
333 South Hope Street, 16th Floor
Los Angeles, California  90071

Attorneys for Europacific Parts
International, Inc. t/a S.A.V.E.
and Interstate Automotive
Distributors, a California corporation
Telephone: (213) 576-1000
**Telecopier: (213) 576-1100**

Craig D. Aronson
Berger Kahn
A Law Corporation
2 Park Plaza, Suite 650
Irvine, California  92614-8516

Attorneys for Interstate Automotive
Distributors, a California corporation
dba Genuine

Telephone: (949) 474-1880
**Telecopier: (949) 474-7265**

to a messenger or messengers for personal delivery.

1    ☑    **Service by Commercial Overnight Messenger:** placing a true copy thereof in an

2 envelope to the attorney(s) of record, addressed as follows:

3      H. Kenneth Kudon                         Attorneys for Europacific Parts
     Kudon Law Firm                          International, Inc. t/a S.A.V.E.

4      2 Old Creek Court

5      Potomac, Maryland 20854            Telephone: (301) 279-5634
                                    **Telecopier: (301) 294-6407**

6

7      Richard S. Price                           Attorneys for Defendants
     Attorney at Law

8      1235 North Harbor Boulevard, Suite 200    Telephone: (714) 871-1132

9      Fullerton, CA 92832-1324          **Telecopier: (714) 871-5620**

10 and after sealing said envelope I caused same to be delivered to the aforementioned

11 attorney(s) by qualified commercial overnight messenger.

12        I certify under penalty of perjury that the foregoing is true and correct, that the

13 foregoing document(s), and all copies made from same, were printed on recycled paper, and

14 that this Certificate of Service was executed by me on July 14, 2003 at Los Angeles,

15

16 California.

17

18                                  Laura Rocha

Gibson, Dunn &
Crutcher LLP